UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| RICHARD P. MACHIELE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-624 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits (DIB). On July 4, 2010, plaintiff filed his application for benefits alleging a November 11, 2007 onset of disability. (A.R. 150-51). He later amended his claim to allege a September 15, 2010 onset of disability.[1] Plaintiff's disability insured status expired on September 30, 2011. Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled on or before September 30, 2011. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim was denied on initial review. On February 16, 2012, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 33-92). On May 3, 2012, the ALJ issued her decision finding that plaintiff was not disabled. (A.R.

---

[1] In September 2010, plaintiff tested positive for cocaine. In 2011, he testified that he had not returned to drug or alcohol abuse. In light of his testimony and the positive drug test, he amended his claim to allege a September 15, 2010 onset of disability. (A.R. 81, 85, 172, 393).

16-26). On May 14, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

> The ALJ erred by "failing to properly weigh" the medical opinion evidence under 20 C.F.R. § 404.1527(c)(2) by:
>
> A. Failing to give controlling weight to the the opinions of John Lemke, M.D., and Brian Seely, Psy.D.; and
>
> B. Failing to balance the *Wilson* factors and provide good reasons for the weight given to treating source opinions.

(Plf. Brief at 1-2, docket # 15). I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from September 15, 2010, through September 30, 2011, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after September 15, 2010. (*Id.*). Plaintiff had the following severe impairments: "obesity, degenerative changes of the lumbar spine, bipolar disorder, antisocial personality disorder, and history of alcohol, cocaine, and heroin

addiction."[2]  (*Id.*).  Through his date last insured, plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a sit/stand option. The claimant should have less than frequent interaction with coworkers and no transactional contact with the public. He should avoid concentrated exposure to unprotected heights and dangerous moving machinery.

(A.R. 20). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible:

> After careful consideration, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In reaching this conclusion, I find the claimant credible to the extent he testified that he has some difficulty sitting, standing, walking, and lifting. Therefore, I have restricted the claimant to light work to reflect these limitations. I have also allowed him the option to alternate between sitting and standing. These limitations are consistent with the mild objective findings arising from the claimant's physical conditions. Because of medication side effects and pain, the claimant requires restrictions against exposure to unprotected heights and dangerous moving machinery. The claimant also stated that he experiences

---

[2]Plaintiff has a significant substance abuse history, including heroin, crack cocaine, LSD, mushrooms, mescaline, and alcohol. (*See, e.g.*, A.R. 22, 274). Since 1996, the Social Security Act, as amended, has precluded awards of DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. § 404.1535; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. Aug. 17, 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d 380, 365 (6th Cir. 2013).

> frustration dealing with people due to his temper and mood swings. Therefore, I have reduced his interaction to less than frequent contact with coworkers and no transactional contact with the public. This is consistent with his reported ability to shop for groceries in the store, attend group meetings, visit friends, and use public transportation (3E).
>
> However, the claimant's allegations that he is incapable of all work activity are not credible. For example, the claimant testified that he is able to repair old electronics and take online courses. He also reported that he is able to fish, play video games, perform community service, prepare meals, use the computer, read, watch documentaries, and shop for groceries. These activities are inconsistent with the claimant's allegations of significant limitations. Furthermore, as discussed above, the claimant's mental impairments are well controlled with medication (6F/2). Weighing all the relevant factors, I conclude that the claimant's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity outlined in this decision.

(A.R. 22). Plaintiff could not perform any past relevant work. (A.R. 24). Plaintiff was 45-years-old as of his date last insured. Thus, he was classified as a younger individual at all times relevant to his claim for DIB benefits. (*Id.*). Plaintiff has at least a high-school education and is able to communicate in English. (*Id.*). The ALJ found that the transferability of jobs skills was not material to a determination of disability. (*Id.*). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with his RFC, education, and work experience, the VE testified that there were approximately 11,300 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 88-89). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 24-26).

**1.**

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions found in the RFC questionnaires completed by Dr. Lemke and Psychologist Seely. The issue whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.

20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[3] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because these are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective

---

[3]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3).

criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Applying these principles, I find no deficiency in the ALJ's treatment of the opinion of either Psychologist Seely or Dr. Lemke.

A.   Psychologist Seely

Plaintiff has no history of hospitalization for any mental impairment. Psychologist Seely's initial contact with plaintiff was on June 30, 2010. (A.R. 374). Dr. Seely saw plaintiff on a referral from plaintiff's then-treating physician, Jeffery Chamberlain, M.D. (A.R. 374). Plaintiff stated that he had previous psychotherapy/counseling at Pine Rest and Arbor Circle,[4] but they "misdiagnosed or couldn't provide the right treatment." (A.R. 255). On July 21, 2010, Seely observed that plaintiff "has a history of multiple drug abuse, alcohol abuse and legal trouble. He recently spent 8 months in jail for a DWI and cocaine abuse and is on probation. He has used heroin, mushrooms, LSD, and mescaline. Presently, he denies using or abusing illicit drugs or alcohol." (A.R. 373; *see also* A.R. 246). Seely offered a primary diagnosis of Attention Deficit Hyperactivity Disorder (ADHD) and a secondary diagnosis of Bipolar I Disorder, most recent episode depressed. Seely's letter to Dr. Chamberlain concluded as follows: "Thank you again for the referral and the opportunity it gives me to work with this very interesting man. Provided he is on the right medication, continues in therapy, and satisfies the conditions of his probation, his prognosis is very good." (A.R. 374).

On October 6, 2010, plaintiff informed Psychologist Seely that he "went to jail for 3 days [and] was now out on bond." Plaintiff stated that after his release from jail he got involved with his "drug friends" and used cocaine and heroin. At plaintiff's request, Seely referred plaintiff to a psychiatrist for medication management. (A.R. 301).

---

[4] The program at Arbor Circle had been a court-ordered intensive outpatient program. Plaintiff reported that he was "using cocaine at the time." (A.R. 247).

October 12, 2010, plaintiff received a mental status examination performed by Psychiatrist Henry Mulder. (A.R. 298-300). Dr. Mulder summarized the drug abuse and criminal history that plaintiff disclosed as follows:

> The patient has been an abuser of drugs and alcohol since the age of 15. He has had three DUIs and after his third offense, while on probation he "dropped dirty" with cocaine and heroin. He was in jail for 8 ½ months. He reports that he has been arrested at least 11 times and has spent about two years total in jail.
>
> * * *
>
> He has been an IV heroin abuser for some time and was smoking crack cocaine until a month ago.

(A.R. 298). Psychiatrist Mulder offered a diagnosis of cocaine dependence, opiate dependence, and alcohol abuse, all in "early remission." Further he diagnosed plaintiff as having ADHD and an antisocial personality disorder. He informed plaintiff that "it would be contra-indicated to treat his ADHD symptoms with a stimulant given his ongoing problems with cocaine dependence. Treatment with a stimulant would only predispose to relapse." (A.R. 299). When Dr. Mulder recommended that plaintiff attend "AA or NA," his response was that "they don't do anything for me." (*Id.*). Plaintiff stated that he had been under the impression that "he was going to be prescribed Adderall today and I informed him that would not be the case. He left angrily." (*Id.*). Psychiatrist Mulder concluded his report as follows: "I understand that he is applying for psychiatric disability, which in my opinion would be counter-productive for him, only enabling his irresponsible behavior." (A.R. 300).

On October 27, 2010, plaintiff informed Psychologist Seely that he had obtained a script for Adderall. He stated that he had taken Adderall and found that it was not helpful. (A.R. 297). In November 2010, plaintiff told Seely that he was taking Adderall and that he was more

organized, more productive, much less fidgety, and calmer. Seely stated that plaintiff was doing "much better than when first seen" and was requesting monthly maintenance psychotherapy sessions. (A.R. 295-96). On December 15, 2010, plaintiff stated that he felt relieved that he was not going back to jail or prison. (A.R. 294).

On February 16, 2011, Seely completed a RFC questionnaire. He offered his opinion that plaintiff had extreme limitations in dealing with work stresses and relating predictably in social situations and marked limitations in following work rules, dealing with the public, and behaving in an emotionally stable manner. In addition, he asserted that plaintiff had four or more episodes of decompensation, each of extended duration and marked difficulties in maintaining concentration, persistence or pace. (A.R. 370-72). In therapy sessions conducted after Seely completed the questionnaire, plaintiff disclosed that he had been arrested for driving on a suspended license. In addition, he reported that he was refurbishing and selling electronic parts. (A.R. 287). He was taking care of his mother and working on his associate's degree. When plaintiff took medication as prescribed, his mood was stable and he did not experience rages. (A.R. 287). Psychologist Seely concluded that plaintiff did not have an anti-social personality disorder. (A.R. 286).

The ALJ found that the extreme restrictions that Seely suggested in his questionnaire responses were inconsistent with his own treatment records:

> Brian Seely, Psy.D., the claimant's treating counselor, opined that the claimant had extreme limitations in dealing with work stress and relating predictably in social situations (8F). He also opined that the claimant had marked limitations in following work rules, dealing with [the] public, and behaving in an emotionally stable manner. Furthermore, he opined that the claimant had extreme limitations in social functioning and marked limitations in concentration, persistence or pace (*id*). I give little weight to this opinion, as it is inconsistent with Dr. Seely's own treatment records. Dr. Seely's records indicate that the claimant experienced a dramatic improvement in his condition after starting taking medication and stopped using drugs (6F). The claimant appeared calmer and more stable, and was able to develop a stable relationship with a woman (*id*).

(A.R. 23). The restrictions that Psychologist Seely suggested were not supported by the record as a whole and were inconsistent with his own treatment records. The Sixth Circuit has repeatedly held that inconsistencies between proffered restrictions and the underlying treatment records are "good reasons" for discounting a treating source's opinions. *See, e.g.*, *Hill v. Commissioner*, No. 13-6101, __ F. App'x __, 2014 WL 1257948, at * 1 (6th Cir. Mar. 27, 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012). I find no violation of the treating physician rule.

      B.     Dr. Lemke

Plaintiff began seeing Dr. Lemke at Allendale Family Practice in the wake of Dr. Mulder's refusal to prescribe Adderall and Dr. Chamberlain's refusal to prescribe narcotic medications. Dr. Chamberlain began treating plaintiff in 2010. On June 25, 2010, plaintiff appeared at Dr. Chamberlain's office for the purpose of establishing care. He stated that he had recently been released from prison after serving nine months. Plaintiff related that in the past he was a heavy drinker and that "he used cocaine in the past but report[ed] that he ha[d] not used anytime in the last couple years." (A.R. 267). Dr. Chamberlain stated that he would avoid prescribing controlled substances for plaintiff in light of his history of alcohol and drug abuse. (A.R. 269). Chamberlain's progress notes dated July 15, 2010, record that plaintiff reported that the Zyprexa and Fluoxetine combination pill that he had received was "working great," but when Chamberlain switched plaintiff to Carbamazepine, plaintiff became agitated. Plaintiff reported that he took "3 Xanax to try to get to sleep one night and ended up having difficulty walking the next day." (A.R. 265, 378). Plaintiff reported back pain. On examination, Dr. Chamberlain found that plaintiff was alert and oriented in all three spheres. He had adequate muscle strength and "no sensation problems." Plaintiff had a full

range of motion without pain.  Plaintiff received prescriptions for Norco and Flexeril.  (A.R. 377-78).

On August 16, 2010, plaintiff called Dr. Chamberlain's office to request Flexeril and Norco.  His staff responded that plaintiff would need to be evaluated before scripts could be given.  (A.R. 395).  On August 20, 2010, plaintiff complained of back pain and asked for more medication.  Dr. Chamberlain wrote: "I asked for a urine drug screen.  Patient reports he is unable to urinate at this time [says] he just went before coming in.  Because of his past history of drug abuse, I am not writing a prescription for Norco or Adderall until I get a urine drug screen from him.  [H]e reports that he is going to return later today or on Monday, today being Friday, to do the urine drug screen."  (A.R. 377).  The progress note dated September 13, 2010, indicates that plaintiff was unable to perform his scheduled drug screen because he was incarcerated.  (A.R. 394).  On September 14, 2010, plaintiff reported that he was out on bail and asked for Xanax and Flexeril.  Dr. Chamberlain discovered that plaintiff's urine had tested positive for cocaine.  He stated that he would not prescribe potentially addictive substances for him and offered him non-addictive alternatives.  (A.R. 393).

On November 12, 2010, plaintiff appeared at Dr. Lemke's office seeking medication.  Dr. Lemke's progress notes indicate that he prescribed medication because Dr. Seely stated that plaintiff needed them.  (A.R. 321-22).  Plaintiff reported that he drank alcohol "occasionally."  He did not respond to the intake question regarding his drug abuse history.  (A.R. 321).  Dr. Lemke prescribed Adderall, Flexeril, Tylenol, and Vicodin.  (A.R. 321-22).  On December 7, 2010, plaintiff reported acute and chronic lower back pain and received a prescription for Norco.  (A.R. 360).  In January 2011, plaintiff reported that his back pain had increased.  On examination, Dr. Lemke found

that plaintiff's straight leg raising tests were negative and his strength was 5/5. Nonetheless, Lemke gave plaintiff prescriptions for Flexeril and Norco. Lemke added a prescription for Elavil in response to plaintiff's complaints of insomnia. (A.R. 319). On February 9, 2010, plaintiff stated that he had not set up physical therapy appointments because he was experiencing cash problems. He reported that the Adderall was working well for his ADD. After a conversation with Psychologist Seely, Dr. Lemke prescribed lithium for plaintiff's bipolar disorder. Plaintiff gave Lemke "disability papers" and stated that his back problems prevented him from working.[5] On March 2, and March 24, 2011, Dr. Lemke completed RFC questionnaires. (A.R. 279-83). The ALJ found that some of the physical restrictions suggested by Dr. Lemke were entitled to weight, while others were not because they were inconsistent with the objective medical evidence and the record as a whole:

> As for the opinion evidence, John Lemke, D.O., the claimant's treating physician, issued an opinion regarding the claimant's limitations. Dr. Lemke opined that the claimant is limited to sedentary work with a sit/stand option and would be able to sit, stand, and walk up to two hours each in an eight hour workday (4F). He also opined that the claimant would have serious limitations as to concentration and pace, would be best suited for part time work, and would miss at least three days of work per month (*id*). I give some weight to this opinion, as the sit/stand option is consistent with the medical evidence of record and the claimant's alleged difficulty sitting or standing for extended periods. However, the other limitations provided by Dr. Lemke are inconsistent with the mild objective tests and Dr. Lazarra's observations during the consultative examination.[6]

* * *

---

[5]Lemke's progress notes from October and November 2011 note that plaintiff had been obtaining narcotics from other physicians. He was upset when Dr. Lemke refused to refill pain medication prescriptions. (A.R. 416).

[6]R. Scott Lazarra, M.D., conducted a consultative examination on March 27, 2012. Among other things, he found that plaintiff's gait was "well preserved" and his straight leg raising tests were negative. Dr. Lazarra found that plaintiff's degree of physical impairment was "mild." (A.R. 423-33).

> Dr. Lemke also issued an opinion regarding the claimant's mental limitations. He opined that the claimant had marked limitations in social functioning and concentration, persistence, and pace (5F). He also opined that the claimant had extreme limitations in dealing with work stress and marked limitations in dealing with the public and supervisors, relating predictably in social situations, and demonstrating reliability, as well as moderate limitations in most other areas of functioning (*id*). I give little weight to this opinion, as it is inconsistent with the medical evidence of record and the claimant's activities of daily living. Furthermore, Dr. Lemke did not see the claimant often, and did not focus on mental health treatment, rendering his opinion of the claimant's mental limitations less persuasive.

(A.R. 22-23). The ALJ gave good reasons for the weight he gave to Dr. Lemke's opinions. I find no violation of the treating physician rule.

**2.**

Plaintiff makes the related argument that the ALJ failed to balance the factors listed in 20 C.F.R. § 404.1527(c)(2) in determining the weight of the opinions of treating sources. The factors are the length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and "other factors" which tend to support or contradict an opinion. There is no precise formula for "correct balancing" of the factors, and the ALJ's factual finding is reviewed under the deferential "substantial evidence" standard. *See Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. Under section 404.1527(c)(2), the ALJ is only required to "consider" the factors listed in 20 C.F.R. § 404.1527(c)(2) and provide "good reasons" for the weight given to a treating source's opinion. The regulation does not require a "factor-by-factor" analysis. *See Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Kostovski-Talevska v. Commissioner*, No. 5:13-cv-655, 2014 WL 2213077, at * 9 (N.D. Ohio May 28, 2014) (collecting cases); *Owens v. Commissioner*, No. 1:12-cv-47, 2013 WL 1304470, at * 2 (W.D. Mich. Mar. 28,

2013) (same).  Here, the ALJ considered the relevant factors and gave good reasons for the weight given to the opinions provided by Drs. Lemke and Seely.  With regard to plaintiff's primary care physician, the ALJ noted that plaintiff saw Dr. Lemke on an infrequent basis.  Although Lemke prescribed medications that Psychologist Seely suggested, the care Lemke provided generally did not focus on plaintiff's mental health.  (A.R. 23).  The objective evidence showed that plaintiff had only mild degenerative changes of the lumbar spine.  (A.R. 21).  The ALJ recognized Psychologist Seely's specialization and his role as plaintiff's "treating counselor" during the relevant time period from plaintiff's amended onset date of September 15, 2010, through his date last disability insured, September 30, 2011.  (A.R. 23).  The ALJ found that the extreme restrictions that Seely suggested were inconsistent with his own treatment notes, which showed that plaintiff "experienced dramatic improvement in his condition" when he stopped taking illegal drugs and took his medication as prescribed.  (A.R. 23).  The proffered restrictions were further undermined by plaintiff's daily activities, which among other things, included taking college-level courses online and restoring electronic items.  (A.R. 21, 23).  I find no basis for disturbing the Commissioner's decision.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  June 18, 2014              /s/  Joseph G. Scoville
                                   United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).